# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WALTER V. LOVE,

    **Plaintiff,**

    v.                                  Case No. 12-CV-689

JP CULLEN & SONS, INC.,

    **Defendant.**

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

        The plaintiff, Walter V. Love ("Love"), alleges the Defendant, J.P. Cullen & Sons, Inc., ("Cullen") discriminated and retaliated against him based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Amended Complaint, Docket # 17.) Before the court is Cullen's motion for summary judgment arguing that Love was not its de facto or indirect employee for Title VII purposes. (Docket # 21.) For the reasons that follow, Cullen's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARD

        The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## UNDISPUTED FACTS

In September 2005, the City of Milwaukee undertook a large renovation project of the City Hall Building (the "Project"). (Defendant's Proposed Material Facts ("DPF") ¶ 1, Docket # 23 and Plaintiff's Response to Defendant's Proposed Material Facts ("Pl.'s Resp.") ¶ 1, Docket # 29; Plaintiff's Proposed Additional Facts ("PPAF") ¶ 3, Docket # 28.) The defendant, Cullen, was the general contractor on the Project. (PPAF ¶ 8 and Defendant's Response to Plaintiff's Proposed Additional Facts ("Def.'s Resp.") ¶ 8, Docket # 37.) One of Cullen's subcontractors on the Project was Eugene Matthews, Inc. ("EMI"). (DPF ¶ 2 and Pl.'s Resp. ¶ 2.) Pursuant to its contract with Cullen, EMI monitored and supervised performance of work on the Project. (DPF ¶ 3 and Pl.'s Resp. ¶ 3.) Cullen made some bulk purchases of materials and supplies and distributed them to EMI for its and its subcontractors' use. (*Id.*)

Union Contracting, Inc. ("UCI") was a subcontractor of EMI working on the Project. (DPF ¶ 5 and Pl.'s Resp. ¶ 5.) Love began working on the Project as an employee of UCI, on or about June 2007. (PPAF ¶ 3 and Def.'s Resp. ¶ 3.) Love was a member of Laborers Union Local 113 in Milwaukee, Wisconsin from at least August 31, 2008 through approximately November 2012, when he could no longer afford to pay his union dues, due to being unemployed. (PPAF ¶ 2 and Def.'s Resp. ¶ 2.) Love was hired by UCI as a foreman to work on the renovation project and his duties included but were not limited to, shipping and receiving, management of laborers and masons, and making sure proper materials were on site and properly staged. (PPAF ¶ 4 and Def.'s Resp. ¶ 4.) Love expected that when the Project ended, he would continue to work for UCI on their next project and that his employment would be on-going. (PPAF ¶ 6 and Def.'s Resp. ¶ 6.)

Scott Henninger ("Henninger") was the job superintendent at UCI. (PPAF ¶ 9 and Def.'s Resp. ¶ 9.) Henninger received work directions from Cullen, and then passed those instructions on to Love. (PPAF ¶ 10 and Def.'s Resp. ¶ 10.) Instructions included, what work was to be done, when it was to be done, where it was be done, when it was to be completed, and at times, how it was to be completed. (*Id.*)

Don Berendsen ("Berendsen") was Cullen's superintendant on the job and randomly held meetings that all workers were required to attend; one such meeting involved a lecture by Berendsen on fire safety and workers were directed to have fire extinguishers available in certain work areas. (PPAF ¶ 11 and Def.'s Resp. ¶ 11.) Cullen also controlled access to the Project site via the gates to the Project site. (PPAF ¶ 12 and Def.'s Resp. ¶ 12.) Cullen controlled safety procedures and required safety training for workers on the Project site. (PPAF ¶ 13.) Construction sites can be dangerous and

safety was directly implicated in almost all of the plaintiff's and other workers' daily activities. (PPAF ¶ 14 and Def.'s Resp. ¶ 14.)

On February 28, 2008, Love was involved in an altercation on the Project job site with an employee of Cullen's subcontractor, Artega Construction. (DPF ¶ 11 and Pl.'s Resp. ¶ 11.) Cullen retained the right to remove an employee from the job site, if necessary, to preserve the safety, productivity, and well-being of the workers on the Project. (DPF ¶ 9 and Pl.'s Resp. ¶ 9.) Although the parties dispute whether Berendsen himself removed Love from the job site or Berendsen had UCI remove Love from the job site (DPF ¶ 12 and Pl.'s Resp. ¶ 12), it is undisputed that it was Berendsen who made the decision that Love should be removed from the job site. (Affidavit of Walter Love ("Love Aff.") ¶ 43, Docket # 31; Affidavit of Don Berendsen ("Berendsen Aff." ¶ 12, Docket # 25). Love's last day of work on the Project site was February 28, 2008. (Affidavit of Sara L. Gehrig ("Gehrig Aff.") ¶¶ 2-6, Ex. 1, 2, and 3, Docket # 26.)

## DISCUSSION

Love, an African-American man, who worked as a construction foreman, brings this race discrimination case against Cullen, a general contractor, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Title VII prohibits discrimination based upon race, color, religion, sex, or national origin with respect to hiring, compensation, or the terms, conditions, and privileges of employment. Title VII imposes liability upon the complaining employee's "employer." 42 U.S.C. § 2000e-2(a). A plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action. *See Alexander v. Rush North Shore Med. Center*, 101 F.3d 487, 491-92 (7th Cir. 1996); *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). It is undisputed that Love was not directly employed by Cullen; rather, Love was an employee of UCI, a subcontractor of EMI, who was a subcontractor of Cullen. (DPF ¶ 1-2, 5 and

-4-

Pl.'s Resp. ¶ 1-2, 5; PPAF ¶ 3 and Def.'s Resp. ¶ 3.) However, Love argues Cullen significantly controlled Love's employment and thus was his de facto or indirect employer for Title VII purposes.

An employee may have multiple employers for liability purposes under Title VII. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008) ("We have also held that multiple entities may be considered an employee's 'employer' for the purposes of Title VII liability."). A company can be considered a "de facto or indirect employer" if it "directed the discriminatory act, practice, or policy of which the employee is complaining." *Id.* A company can also be considered an indirect employer when it "control[s] the plaintiff's employment relationship." *Id.* (quoting *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir.1995))."De facto or indirect employer liability depends on the amount of the control a putative Title VII defendant exerts over the plaintiff's employment." *Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002) (citing *EEOC*, 69 F.3d at171-72).

As the parties point out, the standard for determining when an entity is a de facto employer is unsettled. The defendant, relying on *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996) and *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991), argues the proper test for determining whether an entity is the plaintiff's employer for purposes of Title VII liability is a five factor test where the court considers: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.

The plaintiff, on the other hand, argues the "five factor" test is the wrong legal standard because it is only used when assessing the employment relationship of an independent contractor. The plaintiff argues the correct legal standard to be applied in cases of de facto or indirect employment is an evaluation of the amount of control exerted by the alleged de facto employer, citing *EEOC v. State of Illinois*, and the "economic realities" of the employment relationship, citing *Tamayo*.

There is no clear Seventh Circuit precedent addressing the issue of a de facto employer for Title VII purposes. Most courts in this circuit have addressed this issue in terms of the amount of control the putative employer exercises over a worker; however, the court acknowledges that the amount of control a putative employer exercises over a worker often overlaps with other considerations taken from the "five factor test," such as control over the form and amount of payment and the ability to fire the worker. *See Hall v. Walsh Construction Co.*, No. 11 CV 8706, 2012 WL 3264921 (N.D. Ill. Aug. 9, 2012) ("control test"); *Fly v. Walsh Construction Co.*, No. 10-CV-126, 2011 WL 6152193 (N.D. Ind. Dec. 12, 2011) ("five factor" test); *Atkins v. Northrop Grumman Information Technology, Inc.*, No. 07-cv-1669, 2009 WL 1456993 (S.D. Ind. May 21, 2009) ("control test"); *Kerr*, 229 F. Supp. 2d 880 ("control test"); *EEOC v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 515524 (N.D. Ill. July 14, 1999) ("five factor" test)[1]; *but see Hernandez v. Valet Parking Service, Inc.*, No. 04 C 7559, 2005 WL 2861054 (N.D. Ill. Oct. 27, 2005) (completely rejecting a theory of indirect/de facto employer liability, finding that "Title VII specifically provide[s] for liability of an

---

[1] The court acknowledges that although the court in *Foster Wheeler* found the general contractor was not a Title VII employer of its subcontractor's employees, it still allowed the subcontractor's employees to maintain a Title VII action against the general contractor under an interference theory. The court agrees with the *Kerr* court that in light of Judge Posner's analysis of interference/aider and abettor liability in *EEOC v. State of Illinois*, this theory is unavailable in a Title VII action. *Kerr*, 229 F. Supp. 2d at 887; *EEOC*, 69 F.3d at 169. However, the court finds the *Foster Wheeler* court's analysis instructive on determining whether a general contractor is the employer of a subcontractor's employee for Title VII purposes.

-6-

employer and make[s] no provisos for other entities that relate to a plaintiff in an indirect manner"). From a review of these cases, the court finds that the most appropriate analysis is set forth by the Northern District of Illinois in *Kerr*, which found, citing the Seventh Circuit's dicta in *EEOC v. State of Illinois*, that de facto or indirect employer liability depends on the amount of control a putative Title VII defendant exerts over the plaintiff's employment. However, the court also finds that the other factors set forth in the "five factor" test are useful for determining the amount of control an employer exerts over a worker.

For example, *Fly*, a case decided by the Northern District of Indiana, utilizes the "five factor" test, but is factually analogous and persuasive. In *Fly*, the plaintiff was an employee of a subcontractor to a subcontractor of the general contractor on a project. The court granted summary judgment for the defendant general contractor, finding the defendant was not the plaintiff's de facto employer. In so holding, the court considered that although the plaintiff's supervisor asserted in his affidavit that the general contractor assigned duties to the subcontractor's employees and supervised them, the affidavit did not explain the specific nature of the general contractor's supervision or control. 2011 WL 6152193, at *3. Further, the court considered the fact that the general contractor did not pay the plaintiff directly; rather, the general contractor paid the subcontractor, who in turn paid the plaintiff. *Id.* Finally, in finding for the defendant, the court considered that the general contractor did not have the authority to terminate the plaintiff's employment with the subcontractor, did not provide the plaintiff with a W-2, health insurance, job training, or promises of employment. *Id.*

In *Atkins*, although not a summary judgment decision, the court denied the defendant's motion to dismiss, finding the plaintiff alleged enough facts that, if true, demonstrated that the defendant acted as the plaintiff's indirect employer for Title VII purposes. The court considered the

following facts: the defendant determined the plaintiff's work assigned; completed plaintiff's performance evaluations; determinated plaintiff's rate of pay and whether or not he received promotions or raises; supervised plaintiff's work and controlled plaintiff's training; maintained records of employment; and retained the power to terminate plaintiff's employment. 2009 WL 1456993, *4.

Using these cases as guidance for the relevant factors to consider in determining whether an employer is a plaintiff's de facto employer for Title VII purposes, the undisputed facts do not support the conclusion that Cullen is Love's de facto employer. It is undisputed that Love was hired by UCI, not Cullen. (PPAF ¶ 4 and Def.'s Resp. ¶ 4.) After the City Hall Project ended, Love expected to continue working for UCI on its next project and that his employment with UCI would be ongoing. (PPAF ¶ 6 and Def.'s Resp. ¶ 6.) Love received paychecks from UCI for work in 2007 (Gehrig Aff. ¶¶ 5, Exs. 4-5, Docket # 26-4) and a 2008 W-2 from UCI (*id.*, Ex. 5, Docket # 26-6). There is no evidence Cullen ever paid Love for his work or ever provided Love with a W-2 for his work. While UCI received work direction from Cullen, Love received work direction directly from UCI. (PPAF ¶ 10 and Def.'s Resp. ¶ 10.) Although the parties agree that Cullen once required UCI's employees to tear out a section of terra cota that was installed incorrectly, (*id.*, Love Aff. ¶ 11), the evidence does not show that these orders came directly from Cullen, as opposed to coming from UCI.

Love argues that Cullen was his indirect employer because Cullen controlled his employment "in powerful and significant ways." (Pl.'s Br. in Opp'n to Summ. J. at 18, Docket # 27.) First, Love argues, based on a provision in the contractor-subcontractor contract between Cullen and EMI requiring subcontractors to hire union workers on the Project, that Cullen dictated Love's wages, hours and benefits. True, Cullen required its subcontractors to use union workers. (Wisnefsky Aff. ¶ 6, Ex. 1, Section 10.1.) But that does not make it an indirect employer of the employees of the

-8-

subcontractors. As the Seventh Circuit aptly analogized in examining whether the state was the "real" employer of teachers employed by local school districts in *EEOC v. State of Illinois*, the fact that the state set the minimum salary for the teachers was akin to the federal government setting the minimum wage. *EEOC*, 69 F.3d at 171. But no one supposes that the federal government is an indirect employer to all the workers covered by the federal minimum wage law. *Id.* The court concluded that the key powers are hiring and firing. *Id.* Similarly here, that Cullen required its subcontractors to have union workers does not make it Love's indirect employer.

As to hiring and firing, undisputably, Cullen did not hire Love. UCI hired its own employees and hired Love. As to firing, Love urges that Cullen reserved for itself the right to remove employees from the Project for safety reasons. More to the point, Love avers that Cullen removed him from the job site, thus ending his employment with UCI. (Love Aff. ¶¶ 49, 64.) Cullen avers that it had no authority to terminate the employment of any worker on the Project except for Cullen's own employees. (Berendsen Aff. ¶ 6.) It is undisputed that Cullen made the decision to remove Love from the Project site. (Berendsen Aff. ¶ 12.) UCI's superintendent, Henninger, stated that he would have liked to have been able to keep Love on the Project, but Cullen would not allow it. (Henninger Aff. ¶ 13.) While the facts presented indicate that Cullen's action of removing Love from the Project had the effect of rendering him unemployed, Love does not present evidence contesting Cullen's statement that it had no authority to terminate Love's employment relationship with UCI. Love stated that he expected to continue working for UCI when the Project ended. (Love Aff. ¶ 7.) Indeed, Love had been hired by UCI initially to work on the Project. But, there is no indication that Cullen interfered with Love's ability to continue working with UCI on other projects at other job sites, even though he could no longer work on the City Hall Project site. Thus, the evidence indicates Cullen

did not have the authority to terminate Love's employment with UCI. In other words, though Cullen retained the right to remove employees from the job site and in fact removed Love, there is no evidence to support that it had the power to fire Love from employment with UCI.

Neither do other factors indicate an indirect employment relationship. Although Cullen made some bulk purchases of materials and supplies which were distributed to EMI for its use and the use of its subcontractors (DPF ¶ 3 and Pl.'s Resp. ¶ 3), this does not indicate an indirect employment relationship between Cullen and Love. The contract between Cullen and EMI dictates that EMI must furnish all labor, materials, equipment, and services for the Project. (Wisnefsky Aff. ¶ 6, Ex. 1, Section 9.1.) Cullen's admission that it made bulk purchases merely shows that it furnished EMI with some supplies, it does not show Cullen provided any supplies or materials directly to UCI or to Love.

Next, that Cullen required UCI's employees to attend safety training does not indicate that Cullen was Love's de facto employer. (PPAF ¶¶ 11, 13.) *See Fly*, 2011 WL 6152193, at *2 (finding defendant not de facto employer even though it required plaintiff to attend safety orientation meetings); *see also Foster Wheeler*, 1999 WL 515524, at *7 (finding the fact a general contractor maintained and enforced rules regarding safety on the job site did not make general contractor a Title VII employer of its subcontractor's employees). Although the plaintiff vaguely states that Cullen required him to attend other "meetings," he does not give any example other than a safety-related meeting regarding fire safety. (Love Aff. ¶ 11.)

Finally, that Cullen controlled access to the Project site does not indicate an indirect employment relationship. The parties agree that Cullen controlled access to the Project site (PPAF ¶ 12 and Def.'s Resp. ¶ 12) and as discussed above retained the right to remove employees from the Project site, if necessary, to preserve the safety, productivity, and wellbeing of other workers on the Project. (DPF ¶ 9 and Def.'s Resp. ¶ 9). These facts do not show Cullen was Love's employer. *See*

*Foster Wheeler*, 1999 WL 515524, at *7 (rejecting the EEOC's claim that the general contractor's control of entry onto the work site and ability to bar rulebreakers from the cite created an employment relationship with subcontractor's employees).

In conclusion, the undisputed evidence shows that Cullen was not Love's employer for Title VII purposes. Without an employment relationship, Cullen is not liable to Love under Title VII. Accordingly, the court need not address Cullen's alternative arguments regarding limitation on damages.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docket # 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of September, 2013.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge